## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| Brande Roderick, Denise Trlica, Dessie Mitcheson, Joanna Krupa, Katarina Van Derham, Laurie Romeo, Lucy Pinder, Paola Canas, and Rosie Roff, | **Civil Action No.** <br><br> **Judge** <br> **Magistrate Judge** |
| Plaintiffs, | **COMPLAINT AND JURY DEMAND** |
| v. | |
| Midwest Hospitality Investments L.C., Cedar Parking and Storage Management L.L.C., Cedar Parking and Storage Investments, L.L.C., collectively doing business as Lumberyard, | |
| Defendants. | |

## <u>COMPLAINT AND JURY DEMAND</u>

Plaintiffs Brande Roderick, Denise Trlica, Dessie Mitcheson, Joanna Krupa, Katarina Van Derham, Laurie Romeo, Lucy Pinder, Paola Canas, and Rosie Roff (collectively, "Plaintiffs"), by and through their undersigned attorneys, for their Complaint, respectfully allege, based on personal knowledge as to facts relating to themselves and upon investigation of counsel for all other allegations, against Midwest Hospitality Investments L.C., Cedar Parking and Storage Management L.L.C., and Cedar Parking and Storage Investments, L.L.C. (collectively, "Defendants"), collectively doing or formerly doing business as "Lumberyard" in both Des Moines, Polk County, Iowa and Cedar Rapids, Linn County, Iowa (collectively, the "Clubs"), as set forth below:

## I.    INTRODUCTION

1.   This case is about a pair of related and commonly branded strip clubs' unauthorized use of several professional models' images and likenesses in the strip clubs' advertisements.

2.   Defendants ran advertisements for its strip clubs on social media.

3.   Defendants' advertisements featured images of Plaintiffs.

4.   Defendants had no authorization, consent, permission, or legal authority to use, alter, or otherwise incorporate images of Plaintiffs – all of whom have no prior affiliation whatsoever with Defendants or the Clubs – into Defendants' advertisements for Defendants' strip clubs, but Defendants did so anyway, whether intentionally, recklessly, or negligently.

5.   Plaintiffs would not choose to advertise or promote Defendants' strip clubs at all as being affiliated with Defendants' strip clubs can harm, defame, and disparage Plaintiffs' modeling services, reputations, and brands, and make it more difficult for Plaintiffs to obtain future work of their choosing or to otherwise commercially use and market their own modeling services, brands, and images.

6.   Even if Plaintiffs had been willing to allow their images to be used by Defendants – which they were not – Plaintiffs would have been rightfully entitled to payment for Defendants' commercial use of their images.

7.   Defendants have not paid Plaintiffs anything despite using Plaintiffs' images in Defendants' advertisements.

8.   Defendants' wrongful conduct, as further described below, gives rise to Plaintiffs' claims against Defendants under the federal Lanham Act, 15 U.S.C. § 1125(a), under Iowa common law, and under principles of equity, entitling Plaintiffs to an award of damages, equitable

remedies, injunctive relief, costs, attorney's fees, and all such other relief as is just and proper as requested herein.

## II.    PARTIES

### A.    Plaintiffs

9.   Plaintiff Brande Roderick is a well-known professional model and is a resident of California.

10. Plaintiff Denise Trlica, also known as Denise Milani, is a well-known professional model and is a citizen of California.

11. Plaintiff Dessie Mitcheson is a well-known professional model and is a citizen of California.

12. Plaintiff Joanna Krupa is a well-known professional model and is a resident of California.

13. Plaintiff Katarina Van Derham is a well-known professional model and is a resident of California.

14. Plaintiff Laurie Romeo, also known as Laurie Ann Young, is a well-known professional model and is a resident of California.

15. Plaintiff Lucy Pinder is a well-known professional model and is a resident of the United Kingdom of Great Britain and Northern Ireland.

16. Plaintiff Paola Canas is a well-known professional model and is a resident of Florida.

17. Plaintiff Rosie Roff is a well-known professional model and is a resident of the United Kingdom of Great Britain and Northern Ireland.

### B.    The Clubs and Defendants

18. "Lumberyard" or "The World Famous Lumberyard" describes itself as the "#1 Gentlemen's Club in Iowa" featuring "shower shows" and a "BYOB" drinks policy, and with a

"Frequently Asked Questions" page stating, among other things, "How many girls do you have? It varies from day to day, but we have over a hundred on the roster!," with two locations, one at 1504 NE 54th Ave, Des Moines, Polk County, Iowa (also known as "Lumberyard I" or "Des Moines Lumberyard") and the other at 5910 4th St SW, Cedar Rapids, Linn County, Iowa (also known as "Lumberyard II" or "Lumberyard Two" or "Cedar Rapids Lumberyard") (collectively referred to herein as the "Clubs").

19. On information and belief, the Lumberyard I location in Des Moines remains open for business as of the date of the filing of this complaint while the Lumberyard II location in Cedar Rapids has been closed since in or around August 2020 following storm damage to the Cedar Rapids location and subsequent sale of the premises to a third party.

20. The Clubs used common branding and shared a website, www.iwantwood.com, that provided and still provides pages for each of the Des Moines and Cedar Rapids club locations, http://www.iwantwood.com/DM/index.html and http://www.iwantwood.com/CR/index.html, respectively, that are similar in substance and appearance in several respects.

21. The Clubs are or were what is commonly referred to as "strip clubs."

22. Defendant Midwest Hospitality Investments L.C. is an Iowa domestic limited liability company listed as inactive with the Iowa Secretary of State, Business No. 249252, and administratively dissolved by the Iowa Secretary of State on September 7, 2021 for failure to deliver the 2021 Biennial Report as required by Iowa Code section 489.209.

23. Defendant Midwest Hospitality Investments L.C is listed as the owner of the 1504 NE 54th Ave, Des Moines, Polk County, Iowa real property where the Lumberyard I Club is located by the Polk County Assessor.

24. Defendant Cedar Parking and Storage Management, L.L.C., is an Iowa domestic limited liability company listed as inactive with the Iowa Secretary of State, Business No. 298516, and administratively dissolved by the Iowa Secretary of State on August 9, 2011 for failure to deliver the 2011 Biennial Report as required by Iowa Code section 489.209.

25. On or about September 27, 2020, "Cedar Parking & Storage Management LLC" granted the real property parcel number 190935301200000, commonly known as 5910 4th St SW, Cedar Rapids, Linn County, Iowa, where the Lumberyard II Club was located, to a third party by corporate warranty deed.

26. On information and belief, Defendant Cedar Parking and Storage Investments L.L.C. is not a registered entity with the Iowa Secretary of State in any way and, on information and belief, may be an unregistered fictious name of Defendant Cedar Parking and Storage Management, L.L.C. or some other form of alias for individuals or entities carrying on the business of the Clubs.

27. On or about December 4, 2019, in an unrelated Fair Labor Standard Act Action against the Clubs, *Turner v. Midwest Hospitality Investments L.C.*, Case No. 4:19-cv-00306-JAJ-SBJ (S.D. Iowa), counsel for Midwest Hospitality Investments, L.C., submitted a motion to dismiss in favor of arbitration, stating, among other things, that the plaintiff in that case "performed on the premises of Midwest Entertainment [sic] Investments L.C. d/b/a Lumberyard I and Cedar Parking and Storage Investments L.L.C. d/b/a Lumberyard II" and further submitted declarations from Club managers Eric Glassell and Eric Hensen that stated, in relevant part, in the Glassell declaration dated December 3, 2019, "I am employed as a manager by Midwest Hospitality Investments L.C. d/b/a Lumberyard I ("Lumberyard I") at 1504 NE 54th Avenue in Des Moines, Iowa. I have been a manager at Lumberyard I since approximately January of 2013," and in the

Hensen declaration dated December 3, 2019, "I am employed as a manager by Cedar Parking and Storage Investments, L.L.C. d/b/a Lumberyard II ("Lumberyard II") at 5910 4th Street in Cedar Rapids, Iowa. I have been a manager at Lumberyard II since approximately September of 2014", and further submitted an Entertaining Licensing Agreement defining "Cedar Parking and Storage Investments L.L.C." as "d/b/a The Lumberyard II."

28. On information and belief, the fictious names "Lumberyard," "Lumberyard I," and "Lumberyard II" are not registered with the Iowa Secretary of State.

29. On information and belief, and based in part on administrative dissolutions of Defendant Midwest Hospitality Investments L.C. and Defendant Cedar Parking and Storage Management, L.L.C., and in part on the contradictory evidence of existence of Defendant Cedar Parking and Storage Investments, L.L.C., and in part on Defendants' failures to register any "Lumberyard" fictious names with the Iowa Secretary of State, obscuring complete identification of the owners and operators of the Clubs from public records, Defendants are all alter egos of one another and collectively own, operate, and manage the Clubs, or have previously done so, through common officers, managers, employees, agents, or independent contractors, operating, in essence, as a single enterprise with respect to the Clubs' advertising activities.

30. As the owners, operators, and managers of the Clubs, Defendants are ultimately responsible for the production and posting of advertisements for the Clubs by Defendants' officers, managers, employees, agents, or independent contractors.

### III.    JURISDICTION AND VENUE

31. This Court has federal question jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiffs allege violations of the federal Lanham Act, 15 U.S.C. §1125, *et seq*.

32. Venue is proper in this under 28 U.S.C. § 1391 because Defendants are located in this judicial district and because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district and division.

## IV.    FACTUAL ALLEGATIONS

### A.    A Model's Reputation Impacts the Commercial Value of Their Images, Likenesses, Trade Dress, and Advertising Ideas

33. Each Plaintiff is, and at all times mentioned herein was, a well-known professional model who earns compensation by, among other things, commercializing her identity, image, likeness, trade dress and advertising ideas for many business endeavors, including the advertisement and promotion of products and services through negotiated, arms-length transactions with reputable commercial brands and companies.

34. As professional models, Plaintiffs' business includes trading on their inherently distinctive looks and physical attractiveness to bring attention to the products, brands, and services that Plaintiffs choose to affiliate with.

35. Furthermore, a model's reputation directly impacts the commercial value associated with the use of their image, likeness, identity, trade dress, or advertising ideas to promote a product or service.

36. As such, a model has the right to control the commercial exploitation of their name, image, likeness, identity, trade dress, and advertising ideas.

37. Each Plaintiff expended substantial effort, resources, and time in building and protecting their reputation in the modeling industry.

38. Each Plaintiff carefully considers and vets the reputation, brand, and type of goods or services advertised by any potential client prior to authorizing the use of their image or likeness by that client.

39. Each Plaintiff's career in modeling has substantial value derived from the goodwill and reputation each has built.

40. Each Plaintiff commands substantial sums of money for the licensed commercial use of their image and likeness.

41. Unauthorized use of each Plaintiff's image or likeness can diminish, defame, and disparage the goodwill and reputation each Plaintiff has built and the amount of compensation each Plaintiff can command for the licensed or authorized use of their image, likeness, identity, trade dress, and advertising ideas.

42. As such, Plaintiffs must vigorously defend against unauthorized use of their image, likeness, identity, trade dress, and advertising ideas by third parties like Defendants that choose to steal Plaintiffs' image, likeness, identity, trade dress, and advertising ideas for use in Defendants' own advertisements without payment or consent, fraudulently representing to the public that Plaintiffs endorse, approve, or agreed to advertise Defendants' Clubs, including the fully or partially nude live entertainment activities believed to take place at Defendants' Clubs, thereby devaluing, disparaging, defaming, and causing confusion with respect to Plaintiffs, Plaintiffs' brands, and Plaintiffs' modeling work product.

**B.     Defendants Used Plaintiffs' Images, Likenesses, Trade Dress, and Advertising Ideas to Promote Defendants' Business Interests**

43. As the owner of strip clubs, Defendants' business includes trading on the physical attractiveness of women to entice customers into its Clubs.

44. Defendants use social media accounts featuring images of physically attractive women to promote, advertise, and market the Clubs, solicit customers for the Clubs, and publish endorsements of the Clubs.

45. Defendants are ultimately responsible for the advertising content posted by or on behalf of Defendants through Defendants' officers, managers, employees, agents, or independent contractors on various web and social media accounts, including on the Clubs' web page and on the Clubs' social media accounts.

46. Defendants' advertisements for the Clubs ran on at least the Facebook accounts https://www.facebook.com/DesMoinesLumberyard/ and https://www.facebook.com/lumberyardtwo / as well as on the Twitter accounts https://twitter.com/LumberYard1DM and https://twitter.com/lumberyardtwo, and the Instagram Accounts https://www.instagram.com/thelumberyard1/ and https://www.instagram.com/lumberyardcr/ (the Clubs' "Social Media Accounts").

47. Defendant provided links to several of the Clubs' Social Media Accounts through the Clubs' webpage www.iwantwood.com.

48. Because Defendants used common branding for the Clubs and linked to several of the Clubs' various Social Media Accounts through a common webpage www.iwantwood.com for both Clubs, advertisements for Defendants' Des Moines location also promoted Defendants' Cedar Rapids location and vice versa.

49. Defendants have, and at all times mentioned herein had, authority to control their own use of their webpage and Social Media Accounts to promote the Clubs.

50. Defendants used Plaintiffs' photographs, images, likenesses, distinctive appearances, and trade dress, as well as Plaintiffs' advertising ideas, in advertising materials published by or for Defendants on the Clubs' Social Media Accounts and webpage to market, promote, and advertise the Clubs, all without consent, authorization, or legal right.

51. By using Plaintiffs' images in Defendants' advertisements for the Clubs on the Social Media Accounts and webpage, Defendants falsely and fraudulently represented to the public that Plaintiffs endorse, are affiliated with, are associated with, would perform at, or agreed to advertise the Clubs, when, in fact, Plaintiffs had and have no connection with the Clubs whatsoever.

52. Defendants used Plaintiffs' images to bring attention from consumers to the Clubs and derive benefit from the some of the same qualities of Plaintiffs, including their physical look and distinctive appearances, that Plaintiffs trade on to earn income for themselves, thus competing with Plaintiffs over the very same consumer attention that contributes to the economic value of Plaintiffs' images, likenesses, identities, trade dress, and advertising ideas in the first place.

53. Defendants' misappropriations of each Plaintiff's image, likeness, identity, trade dress, and advertising ideas, falsely and fraudulently associating them with the Clubs, include *at least* the following advertisements, identified by Plaintiff(s) featured in the advertisement, date posted, social media account posted on, and uniform resource locator (URL) at which the advertisement could be found, as follows:

    1) Brande Brande Roderick, 3/12/2016, Facebook,

      https://www.facebook.com/DesMoinesLumberyard/photos/1282087008474960/

    2) Brande Roderick, 3/6/2015, Facebook,

      https://www.facebook.com/DesMoinesLumberyard/photos/1064278823589114/

    3) Brande Roderick, 10/3/2014, Facebook,

      https://www.facebook.com/DesMoinesLumberyard/photos/957787767571554/

    4) Denise Trlica, 11/13/2019, Twitter,

      https://twitter.com/lumberyardtwo/status/1194712641220042757

5) Denise Trlica, 11/13/2019, Facebook,

   https://www.facebook.com/lumberyardtwo/photos/2480779438637510

6) Denise Trlica, 11/13/2019, Instagram, https://www.instagram.com/p/B40aRovnT-1/

7) Denise Trlica, 11/14/2019, Instagram, https://www.instagram.com/p/B43GumfgQaA/

8) Denise Trlica, 11/14/2019, Facebook,

   https://www.facebook.com/lumberyardtwo/photos/2483035165078604

9) Denise Trlica, 11/14/2019, Facebook,

   https://www.facebook.com/DesMoinesLumberyard/photos/3081193248564318/

10)    Denise Trlica, 11/14/2019, Twitter,

   https://twitter.com/lumberyardtwo/status/1195091868717060096

11)    Denise Trlica, 11/13/2019, Facebook,

   https://www.facebook.com/DesMoinesLumberyard/photos/3078576775492632/

12)    Dessie Mitcheson, 5/15/2018, Instagram, https://www.instagram.com/p/Bi0ft--
   gmf7/

13)    Dessie Mitcheson, 5/18/2018, Facebook,

   https://www.facebook.com/lumberyardtwo/photos/1633554566693339/

14)    Dessie Mitcheson, 5/18/2018, Instagram,

   https://www.instagram.com/p/Bi7vk0AgV6V/

15)    Joanna Krupa, 1/13/2020, Facebook,

   https://www.facebook.com/DesMoinesLumberyard/photos/a.410203295663340/32246
   97214213920/

16)    Joanna Krupa, 11/16/2019, Facebook,

   https://www.facebook.com/lumberyardtwo/photos/2487412307974223

17)    Joanna Krupa, 11/16/2019, Facebook,

18)    https://www.facebook.com/DesMoinesLumberyard/photos/3086285944721715/

19)    Joanna Krupa, 11/16/2019, Twitter,

https://twitter.com/lumberyardtwo/status/1195829019465400321

20)    Joanna Krupa, 11/16/2019, Instagram,

https://www.instagram.com/p/B48V8a0gzzF/

21)    Katarina Van Derham, 12/6/2015, Facebook,

https://www.facebook.com/DesMoinesLumberyard/photos/a.410203295663340/122066
0514617610/

22)    Katarina Van Derham, 12/21/2014, Facebook,

https://www.facebook.com/DesMoinesLumberyard/photos/a.410203295663340/1008992
822451048/

23)    Laurie Romeo, 3/17/2018, Facebook,

https://www.facebook.com/lumberyardtwo/photos/1573255846056545

24)    Laurie Romeo, 3/11/2018, Twitter,

https://twitter.com/lumberyardtwo/status/972979103493173249

25)    Lucy Pinder, 10/30/2019, Facebook,

https://www.facebook.com/lumberyardtwo/photos/2450907644958023

26)    Lucy Pinder, 10/30/2019, Instagram,

https://www.instagram.com/p/B4QIeJSHcIM/

27)    Lucy Pinder, 10/30/2019, Twitter,

https://twitter.com/lumberyardtwo/status/1189606940185448448

28)     Lucy Pinder, 10/30/2019, Facebook,

https://www.facebook.com/DesMoinesLumberyard/photos/3045897628760547/

29)     Paola Canas, 6/23/2017, Facebook,

https://www.facebook.com/lumberyardtwo/photos/1327320563983409/

30)     Paola Canas, 6/22/2017, Facebook,

https://www.facebook.com/lumberyardtwo/photos/1327319000650232

31)     Paola Canas, 6/21/2017, Facebook,

https://www.facebook.com/lumberyardtwo/photos/1327311443984021 and

https://www.facebook.com/lumberyardtwo/photos/1327313813984084

32)     Paola Canas, 6/20/2017, Facebook,

https://www.facebook.com/lumberyardtwo/photos/1327313570650775

33)     Paola Canas, 6/18/2017, Facebook,

https://www.facebook.com/lumberyardtwo/photos/1309505555764910

34)     Paola Canas, 6/15/2017, Facebook,

https://www.facebook.com/lumberyardtwo/photos/1309504029098396

35)     Paola Canas, 6/14/2017, Facebook,

https://www.facebook.com/lumberyardtwo/photos/1309503809098418

36)     Paola Canas, 6/13/2017, Facebook,

https://www.facebook.com/lumberyardtwo/photos/1309503259098473

37)     Paola Canas, 6/11/2017, Facebook,

https://www.facebook.com/lumberyardtwo/photos/1309502909098508

38)     Paola Canas, 6/8/2017, Facebook,

https://www.facebook.com/lumberyardtwo/photos/1309500832432049

39)   Paola Canas, 6/7/2017, Facebook,

https://www.facebook.com/lumberyardtwo/photos/1309500542432078

40)   Paola Canas, 6/6/2017, Facebook,

https://www.facebook.com/lumberyardtwo/photos/1309500395765426

41)   Paola Canas, 6/4/2017, Facebook,

https://www.facebook.com/lumberyardtwo/photos/1309500215765444

42)   Paola Canas, 6/23/2017, Twitter,

https://twitter.com/lumberyardtwo/status/878344913259311106

43)   Paola Canas, 6/22/2017, Twitter,

https://twitter.com/lumberyardtwo/status/878040154354495488

44)   Paola Canas, 6/21/2017, Twitter,

https://twitter.com/lumberyardtwo/status/877700168836984834

45)   Paola Canas, 6/20/2017, Twitter,

https://twitter.com/lumberyardtwo/status/877337273045577728

46)   Paola Canas, 6/17/2017, Twitter,

https://twitter.com/lumberyardtwo/status/876178135263334400

47)   Paola Canas, 6/15/2017, Twitter,

https://twitter.com/lumberyardtwo/status/875453112374439936

48)   Paola Canas, 6/14/2017, Twitter,

https://twitter.com/lumberyardtwo/status/875151117276987392

49)   Paola Canas, 6/13/2017, Twitter,

https://twitter.com/lumberyardtwo/status/874683033827164160

50)     Paola Canas, 6/11/2017, Twitter,

https://twitter.com/lumberyardtwo/status/874048605656625155

51)     Paola Canas, 6/9/2017, Twitter,

https://twitter.com/lumberyardtwo/status/873232728187162624

52)     Paola Canas, 6/8/2017, Twitter,

https://twitter.com/lumberyardtwo/status/872704245203652608

53)     Paola Canas, 6/7/2017, Twitter,

https://twitter.com/lumberyardtwo/status/872598548063408128

54)     Paola Canas, 6/6/2017, Twitter,

https://twitter.com/lumberyardtwo/status/871979217902116865

55)     Paola Canas, 6/4/2017, Twitter,

https://twitter.com/lumberyardtwo/status/871480683247661056

56)      Rosie Roff, 10/10/2019, Facebook,

https://www.facebook.com/lumberyardtwo/photos/2408762315839223

57)     Rosie Roff, 10/10/2010, Twitter,

https://twitter.com/lumberyardtwo/status/1182370494781231105

58)     Rosie Roff, 10/10/2019, Facebook,

https://www.facebook.com/DesMoinesLumberyard/photos/3000288629988114/

59)     Rosie Roff, 10/10/2019, Instagram, https://www.instagram.com/p/B3ctt0QpqMl/

54. On information and belief, the advertisements listed above were posted by, at the

direction of, or on behalf of Defendants.

55. As of the date of filing this complaint, the advertisements listed above are still publicly posted on Defendants' Social Media Accounts for the benefit of Defendants and are continuing violations of Plaintiffs' rights resulting in continuing harm and damage to Plaintiffs.

56. Plaintiffs did not discover Defendants' unauthorized, false, and fraudulent uses of and trespasses upon Plaintiffs' imagery until shortly before the filing of this Complaint, when a review of Defendants' publicly accessible Social Media Accounts led to the discovery of the unauthorized uses of Plaintiffs' imagery listed above.

57. In the advertisements including the images and likenesses of Plaintiffs listed above, Plaintiffs are readily identifiable in that persons seeing the advertisements with the naked eye can reasonably determine that the persons depicted in the advertisements at issue include Plaintiffs.

58. By placing each Plaintiff's image, likeness, and trade dress on the Club's Social Media Accounts, Defendants convey and reasonably suggest, falsely and fraudulently, that Plaintiffs endorse the Clubs, are affiliated with the Clubs, are associated with the Clubs, participated in the Clubs, may appear at the Clubs, sponsor the Clubs, agreed to advertise the Clubs, and/or approve of the full or partially nude live entertainment activities believed to be taking place at the Clubs.

59. Defendants have falsely represented to the public generally, as well as to advertising clients that had previously engaged or may in the future engage Plaintiffs as paid talent for modeling or other related endeavors, that Plaintiffs endorse the Clubs, are affiliated with the Clubs, are associated with the Clubs, participated in the Clubs, may appear at the Clubs, sponsor the Clubs, agreed to advertise the Clubs, and/or approve of the full or partially nude live entertainment activities believed to be taking place at the Clubs when in fact Plaintiffs do and did not.

60. Defendants' use of Plaintiffs' images, likenesses, identities, trade dress, and advertising ideas was for a commercial purpose and for Defendants' commercial benefit.

61. Defendants used the advertisements containing Plaintiffs' images to drive traffic to the Clubs and increase Defendants' revenue.

62. Defendants have and had no right, consent, authority, license, or authorization to use any of Plaintiffs' images, likenesses, identities, trade dress, or advertising ideas in Defendants' commercial advertisements.

63. Defendants knew or should have known that they had no right to use Plaintiffs' images, likenesses, identities, trade dress, or advertising ideas in commercial advertisements making Defendants' unauthorized use of same knowing, willful, and intentional.

64. In the alternative, Defendants failed to exercise reasonable care, including reasonable care in the supervision of its managers, employees, or contractors, and reasonable care in the promulgation of policies and procedures, with respect to use of images in advertisements for the Clubs of only those persons for whom Defendants had valid consent, license, or authority making Defendants' unauthorized use of Plaintiffs' images, likenesses, identities, trade dress, or advertising ideas reckless or negligent.

**C.     Defendants' Unauthorized Use of Plaintiffs' Images and Likenesses Harmed and Damaged Plaintiffs**

65. In prior instances of authorized commercial marketing and use of each Plaintiff's images, likenesses, identities, trade dress, or advertising ideas by third parties, Plaintiffs negotiated and expressly granted authority for such use pursuant to various terms and conditions and for agreed upon compensation.

66. Defendants never hired or contracted with any of Plaintiffs to advertise, promote, market, endorse, or participate in the Clubs.

67. Defendants never sought Plaintiffs' permission to use any of Plaintiffs' images, likenesses, identities, trade dress, or advertising ideas to advertise and promote the Clubs, or for any other purpose.

68. Plaintiffs never gave Defendants permission to use Plaintiffs' images or likenesses, nor did Plaintiffs otherwise authorize, license, assign, or grant Defendants any right to use Plaintiffs' images, likenesses, identities, trade dress, or advertising ideas for commercial purposes.

69. Defendants never compensated Plaintiffs for any use of any of images, likenesses, identities, trade dress, or advertising ideas.

70. Defendants' unauthorized use of Plaintiffs' images, likenesses, identities, trade dress, or advertising ideas was and is misleading, confusing, and fraudulent.

71. Defendants misappropriated Plaintiffs' images, likenesses, identities, trade dress, or advertising ideas in total disregard of Plaintiffs' rights.

72. As a direct and proximate result of Defendants' exploitation of Plaintiffs' images, likenesses, identities, trade dress, or advertising ideas, Defendants made profits or gross revenues in an amount to be established at trial.

73. Plaintiffs have been damaged as a direct and proximate result of Defendants' unauthorized use of Plaintiffs' images, likenesses, identities, trade dress, or advertising ideas for commercial purposes, as Plaintiffs have been deprived of the fair market value compensation they could have otherwise received for the commercial use of same if they had been willing to license same for use by Clubs – which they were not – resulting in damages, the total amount of which will be established by proof at trial.

74. Plaintiffs have further been damaged as a direct and proximate result of Defendants' unauthorized use as such use causes Plaintiffs to lose Plaintiffs' exclusive right to control the

commercial exploitation of Plaintiffs' images, likenesses, identities, trade dress, or advertising ideas, resulting in damages, the total amount of which will be established by proof at trial.

75. Plaintiffs have further been damaged as a direct and proximate result of Defendants' unauthorized use, as such use is detrimental to the value Plaintiffs could otherwise obtain in commercializing Plaintiffs' images, likenesses, identities, trade dress, or advertising ideas, resulting in damages, the total amount of which will be established by proof at trial.

## V.    CLAIMS FOR RELIEF

### COUNT I
**Violations of the Lanham Act, 15 U.S.C. §1125(a) *et seq.* subsections (a)(1)(A) and (a)(1)(B)**

76. Plaintiffs re-state and re-allege paragraphs 1 through 75 above and incorporate the same by reference as though fully set forth herein.

77. Each Plaintiff brings this claim against each Defendant.

78. The Lanham Act, 15 U.S.C. § 1125(a)(1), provides in part:

> Any person who, on or in connection with any goods or services … uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>>
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

79. Defendants are liable to Plaintiffs for violations of subsections 1125(a)(1)(A) (the "false association" or "false endorsement" subsection) and 1125(a)(1)(B) (the "false advertising" subsection) of the Lanham Act, 15 U.S.C. § 1125(a)(1).

80. Plaintiffs, through their careers in modeling, attractiveness, and individually distinctive physical looks, have all attained a degree of fame, celebrity, and public prominence.

81. Each Plaintiff enjoys a substantial social media following and has appeared in numerous authorized advertising campaigns, publications, shows, productions, or paid appearances.

82. Each Plaintiff earns or has earned compensation by commercializing their identity for use by reputable brands and services through arms-length negotiated transactions.

83. Each Plaintiff possesses a valid and protectable interest in their persona, image, likeness, identity, and trade dress that is eligible for protection under 15 U.S.C. § 1125(a)(1).

84. Each Plaintiff has possessed, maintained, and safeguarded their exclusive right to control the use of their persona, image, likeness, identity, and trade dress.

85. Prior to authorizing the use of their image, likeness, identity, or trade dress, each Plaintiff carefully considers the reputation of the potential client and the good or service being promoted.

86. Plaintiffs did not authorize Defendants' use of any Plaintiff's image, likeness, identity, or trade dress nor did Plaintiffs grant anyone else authority to authorize Defendants' use of any Plaintiff's image, likeness, identity, or trade dress.

87. Defendants are responsible for the placement of each Plaintiff's image, likeness, identity, or trade dress on or in advertisements promoting the Clubs on Defendants' Social Media Accounts without consent, license, authorization, or legal right.

88. Defendants' unauthorized use of each Plaintiff's image, likeness, identity, or trade dress is ongoing and continuing as of the date of this Complaint.

89. In Defendants' advertisements that contain Plaintiffs' image, likeness, identity, or trade dress, Plaintiffs are depicted and readily identifiable.

90. Defendants misappropriated each Plaintiff's image, likeness, identity, or trade dress in Defendants' advertisements for the Clubs to create the false impression that Plaintiffs are somehow affiliated with, associated with, have endorsed, promoted, agreed to advertise, would be appearing at, or otherwise participated in the Clubs or the live partially or fully nude live entertainment activities believed to take place at the Clubs.

91. Defendants never sought Plaintiffs' consent to use Plaintiffs' image, likeness, identity, or trade dress.

92. Plaintiffs have never been employed by, performed at, danced at, or affiliated themselves in any way with the Clubs or Defendants.

93. Plaintiffs would not agree to allow their image, likeness, identity, or trade dress to be used to promote the Clubs and would not and do not endorse the Clubs or the Clubs' live full or partially nude entertainment activities.

94. Defendants placed its advertisements containing the misappropriated image, likeness, identity, or trade dress of each Plaintiff on some of the very same social media marketing channels used in interstate commerce by Plaintiffs to promote both themselves and the third-party brands, products, and services Plaintiffs choose to promote.

95. Defendants' misappropriation of each Plaintiff's image, likeness, identity, or trade dress is likely to cause confusion as to Plaintiffs' association with, affiliation with, sponsorship of, endorsement of, agreement to advertise or promote, and/or participation in the Clubs or the Clubs' live full or partially nude entertainment activities.

96. On information and belief, Defendants' misappropriation has caused actual confusion among consumers as to Plaintiffs' affiliation with, endorsement of, agreement to advertise or promote, and/or participation in the Clubs or the Clubs' live full or partially nude entertainment activities.

97. Defendants knew or should have known that they had no right to use Plaintiffs' image, likeness, identity, or trade dress to promote or advertise the Clubs.

98. Defendants knew or should have known that obtaining the right to use Plaintiffs' image, likeness, identity, or trade dress would have required consent and substantial compensation.

99. Defendants' unauthorized use of Plaintiffs' image, likeness, identity, or trade dress without seeking their consent under these circumstances constitutes willful and deliberate conduct.

100. In the alternative, Defendants recklessly or negligently failed to exercise reasonable care by failing to ensure that Defendants only used content in their advertisements that Defendants had the legal right to use and by further failing to promulgate sufficient policies and procedures regarding use of only images, likenesses, identities, or trade dresses in advertisements for which Defendants had legal right.

101. As a direct and proximate result of Defendants' actions as described herein, Defendants created the false impression that Plaintiffs were associated with, affiliated with, performed at, endorsed, or otherwise promoted the Clubs or the Clubs' live full or partially nude entertainment activities.

102. As a direct and proximate result of Defendants' actions as described herein, Defendants enjoyed increased revenues and profits subject to disgorgement to Plaintiffs as damages.

103.     As direct and proximate result of Defendants' actions as described herein, Plaintiffs suffered actual damages including but not limited to being deprived of the fair market value compensation Plaintiffs would have otherwise received for the authorized use of their image, likeness, identity, or trade dress and harm to Plaintiffs' goodwill and reputation, which has been disparaged and defamed by Defendants' conduct, all in an amount to be established at trial.

104.     Based on the foregoing, Plaintiffs demand judgment against Defendants on Plaintiffs' Lanham Act claims and entry of an order awarding Plaintiffs damages, injunctive relief, costs, attorney's fees, and all other such other and further relief as to this Court seem just, proper, and equitable.

## COUNT II
### Violation of Plaintiffs' Common Law of Right of Publicity

105.     Plaintiffs re-state and re-allege paragraphs 1 through 75 above and incorporate the same by reference as though fully set forth herein.

106.     Each Plaintiff brings this claim against each Defendant.

107.     Plaintiffs' images, likenesses, and distinctive modelling looks as their trade dress are elements of Plaintiffs' identity.

108.     Plaintiffs' images and likenesses, as well as Plaintiffs' trade dress and advertising ideas, have significant commercial value.

109.     As demonstrated above, Defendants published, posted, displayed, and/or otherwise publicly used Plaintiffs' image, likeness, identity, and trade dress on Defendants' Social Media Accounts without consent for the purposes of trade and commercial advertising, including, but not limited to, promoting, advertising, marketing, and implying endorsement of Defendants' Club, and their events and activities.

110.     Accordingly, Defendants appropriated for its own use and benefit the reputation, prestige, commercial standing, public interest, distinctive look, and other values of each of the Plaintiff's and of their images, likenesses, and identities without consent.

111.     Plaintiffs' faces or bodies are clearly visible and readily identifiable and distinguishable in the Defendants' advertisements.

112.     Plaintiffs never consented to, authorized, licensed, or otherwise permitted Defendants' use of their images, likenesses, or identities for any purpose. Rather, Defendants misappropriated Plaintiffs' images without Plaintiffs' knowledge and without even attempting to acquire Plaintiffs' permission.

113.     Defendants did not use each Plaintiffs' image, likeness, and identity in news reporting, commentary, entertainment, works of fiction or nonfiction, or in advertising that is incidental to such uses.

114.     Defendants did not use each Plaintiffs' image, likeness, and identity primarily for the purpose of communicating information or expressing ideas, but rather used each Plaintiff's image, likeness, and identity primarily for the purpose of commercially advertising Defendants' Clubs.

115.     Defendants acted intentionally in using Plaintiffs' image, likeness, and identity and, knowing they did not have permission to use the images, posted the images to Defendants' Social Media Accounts to market Defendants' Clubs and their activities and events without the authorization of Plaintiffs, appropriating for Defendants' own benefit the image, likeness, identity, physical attractiveness, distinct look, brand, advertising ideas, and trade dress of each Plaintiff.

116.     In the alternative, Defendants acted with reckless disregard to Plaintiffs' legal rights by expressly permitting, allowing, or condoning the use of Plaintiffs' images on its social media

pages for the purpose of marketing, advertising, promoting, and implying endorsement of Defendants' Clubs and their activities.

117.     In the alternative, Defendants acted negligently in permitting, allowing, or condoning the use of Plaintiffs' images on its social media accounts for the purpose of marketing, advertising, promoting, and implying endorsement of Defendants' Clubs and their activities.

118.     Defendants are in the adult entertainment business and knew or should have known of the standard negotiation process over the terms of use, conditions of release, licensing issues, and other contractual incidences related to the use and exploitation of a professional model's image and likeness for Defendants' commercial benefit.

119.     Nonetheless, Defendants circumvented the appropriate licensing and negotiating process, thereby avoiding payment to Plaintiffs, the cost of photoshoots, payments to Plaintiffs' agents or agencies, and the cost of licensing, totaling a substantial sum of money and resulting in a windfall for Defendants.

120.     Defendants' unauthorized use, alteration, and appropriation of Plaintiffs' images and likenesses has and will continue to directly and proximately cause irreparable harm and damage to Plaintiffs, their reputations, and their brands by attributing to Plaintiffs an association with, involvement with, or endorsement of Defendants' Clubs and the Clubs' live fully or partially nude adult entertainment related activities.

121.     As a direct and proximate result of Defendants' misappropriation of Plaintiffs' images and likenesses, Defendants have damaged Plaintiffs by failing to compensate them for the value of use of their likenesses and by causing harm to Plaintiffs' goodwill and reputation, which has been disparaged and defamed by Defendants' conduct.

122.     As a direct and proximate result of Defendants' misappropriation of Plaintiffs' images and likenesses, Defendants have earned and withheld profits attributable directly or indirectly to the unlawful use of Plaintiffs' images, entitling Plaintiffs to a disgorgement of those ill-gotten gains.

123.     Based on the foregoing, Plaintiffs demand judgment against Defendants on Plaintiffs' common law right of publicity claims and entry of an order awarding Plaintiffs damages, injunctive relief, costs, attorney's fees, and all other such other and further relief as to this Court seem just, proper and equitable.

### COUNT III
### Violation of Plaintiffs' Common Law of Right of Privacy – Appropriation

124.     Plaintiffs re-state and re-allege paragraphs 1 through 75 above and incorporate the same by reference as though fully set forth herein.

125.     Each Plaintiff brings this claim against each Defendant.

126.     Plaintiffs' images, likenesses, and distinctive modelling looks as their trade dress are elements of Plaintiffs' identity.

127.     Plaintiffs' images and likenesses, as well as Plaintiffs' trade dress and advertising ideas, have significant commercial value.

128.     As demonstrated above, Defendants published, posted, displayed, and/or otherwise publicly used and appropriated Plaintiffs' images, likenesses, identities, trade dress, and advertising ideas on its social media without consent for the purposes of trade and commercial advertising, including, but not limited to, promoting, advertising, marketing, and implying endorsement of Defendants' Clubs, and their events and activities.

129.     Accordingly, Defendants appropriated for its own use and benefit the reputation, prestige, commercial standing, public interest, distinctive look, trade dress, advertising ideas, and other values of each of the Plaintiffs.

130.     Plaintiffs' faces or bodies are clearly visible and readily identifiable and distinguishable in the Defendants' advertisements.

131.     Plaintiffs never consented to, authorized, licensed, or otherwise permitted Defendants' use of their likenesses, or any other qualities, for any purpose. Rather, Defendants misappropriated Plaintiffs' likenesses without Plaintiffs' knowledge and without even attempting to acquire Plaintiffs' permission.

132.     Defendants did not use each Plaintiffs' likeness in news reporting, commentary, entertainment, works of fiction or nonfiction, or in advertising that is incidental to such uses.

133.     Defendants did not use each Plaintiffs' likeness primarily for the purpose of communicating information or expressing ideas, but rather used each Plaintiff's image and likeness primarily for the purpose of commercially advertising Defendants' Clubs.

134.     Defendants acted intentionally in using Plaintiffs' likenesses and, knowing they did not have permission to use same, posted pictures of Plaintiffs to Defendants' Social Media Accounts to market Defendants' Clubs and their activities and events without the authorization of Plaintiffs, appropriating for Defendants' own benefit the identities, physical attractiveness, distinct look, brand, trade dress, and advertising ideas of each Plaintiff.

135.     In the alternative, Defendants acted with reckless disregard to Plaintiffs' legal rights by expressly permitting, allowing, or condoning the use of Plaintiffs' images on its social media page for the purpose of marketing, advertising, promoting, and implying endorsement of Defendants' Clubs and their activities.

136.     In the alternative, Defendants acted negligently in permitting, allowing, or condoning the use of Plaintiffs' images on its social media accounts for the purpose of marketing, advertising, promoting, and implying endorsement of Defendants' Club and their activities.

137.     Defendants are in the adult entertainment business and knew or should have known of the standard negotiation process over the terms of use, conditions of release, licensing issues, and other contractual incidences related to the use and exploitation of a professional model's image and likeness for Defendants' commercial benefit.

138.     Nonetheless, Defendants circumvented the appropriate licensing and negotiating process, thereby avoiding payment to Plaintiffs, the cost of photoshoots, payments to Plaintiffs' agents or agencies, and the cost of licensing, totaling a substantial sum of money and resulting in a windfall for Defendants.

139.     Defendants' unauthorized use, alteration, and appropriation of Plaintiffs' images and likenesses has and will continue to directly and proximately cause irreparable harm and damage to Plaintiffs, their reputations, and their brands by attributing to Plaintiffs an association with, involvement with, or endorsement of Defendants' Clubs and the Clubs' live fully or partially nude adult entertainment related activities.

140.     As a direct and proximate result of Defendants' misappropriation of Plaintiffs' images, likenesses, identities, trade dress, and advertising ideas, Defendants have damaged Plaintiffs by failing to compensate them for the value of use of their likenesses.

141.     As a direct and proximate result of Defendants' misappropriation of Plaintiffs' images, likenesses, identities, trade dress, and advertising ideas, Defendants have earned and withheld profits attributable directly or indirectly to the unlawful use of Plaintiffs' images, entitling Plaintiffs to a disgorgement of those ill-gotten gains.

142.     Based on the foregoing, Plaintiffs demand judgment against Defendants on

Plaintiffs' common law right of privacy appropriation claims and entry of an order awarding

Plaintiffs damages, injunctive relief, costs, attorney's fees, and all other such other and further

relief as to this Court seem just, proper, and equitable.

**COUNT IV**
**Violation of Plaintiffs' Common Law of Right of Privacy – False Light**

143.     Plaintiffs re-state and re-allege paragraphs 1 through 75 above and incorporate the

same by reference as though fully set forth herein.

144.     Each Plaintiff brings this claim against each Defendant.

145.     By placing pictures of Plaintiffs in which Plaintiff's faces or bodies are

identifiable on Defendants' public social media accounts in commercial advertisements for

Defendants' adult entertainment or "strip" Clubs, at which live fully or partially nude

entertainment activities take place, and thereby stating, inferring, or implying that Plaintiffs

would be performing at or allowed use of their images by Defendants' Clubs, Defendants placed

each Plaintiff in a false light that would be highly offensive to a reasonable person, as Plaintiffs

do not perform at or choose to affiliate themselves with Defendants' live fully nude or partially

nude entertainment venue, and Defendants acted with knowledge or in reckless disregard as to

the falsity of Plaintiffs' association with live fully or partially nude entertainment activities at

Defendants' Clubs.

146.     As a direct and proximate result of Defendants' placement of Plaintiffs in a false

light, Defendants have injured, disparaged, defamed, and damaged Plaintiffs' goodwill and

reputations, entitling Plaintiffs to an award of damages.

147.     Based on the foregoing, Plaintiffs demand judgment against Defendants on their

common law right of privacy false light claims and entry of an order awarding Plaintiffs

damages, injunctive relief, costs, attorney's fees, and all other such other and further relief as to this Court seem just, proper and equitable.

**COUNT V**
**Conversion**

148.      Plaintiffs re-state and re-allege paragraphs 1 through 75 above and incorporate the same by reference as though fully set forth herein.

149.      Each Plaintiff brings this claim against each Defendant.

150.      Each Plaintiff has a possessory interest in their own personal image, likeness, brand, trade dress, and advertising ideas.

151.      Defendants exercised wrongful dominion over each Plaintiff's image, likeness, brand, trade dress, and advertising ideas by taking, altering, and posting same on Defendants' Social Media Accounts without payment, permission, consent, or license from each Plaintiff contrary to Plaintiffs' possessory rights to their own property.

152.      As a direct and proximate result of Defendants' actions as described herein, each Plaintiff suffered actual damages including but not limited to being deprived of control over their own image, likeness, identity, trade dress, and advertising ideas, and incurred further damages in recovering their property through this action, all in an amount to be established at trial.

153.      Based on the foregoing, Plaintiffs demand judgment against Defendants on Plaintiffs' conversion claims and entry of an order awarding Plaintiffs damages, injunctive relief, costs, attorney's fees, and all other such other and further relief as to this Court seem just, proper, and equitable.

## COUNT VI
## Unfair Competition

154.     Plaintiffs re-state and re-allege paragraphs 1 through 75 above and incorporate the

same by reference as though fully set forth herein.

155.     Each Plaintiff brings this claim against each Defendant.

156.     By using Plaintiffs' images, likenesses, advertising ideas, and trade dress in

Defendants' commercial advertisements published on social media, Defendants palmed off,

directly or indirectly, each Plaintiffs' modelling goods, image, likeness, trade dress, and

advertising ideas as Defendants' own, directly or implicitly representing to the public that

Plaintiffs were Defendants' own entertainers or sponsors, and Defendants further palmed off the

goodwill and consumer attention generating qualities of Plaintiffs as Defendants' own, all

without permission, compensation, consent, or license.

157.     By misrepresenting Plaintiffs as Defendants' entertainers or sponsors, Defendants

acted with an intent to deceive or confuse consumers about the nature of Defendants' Clubs' and

the nature of Plaintiffs.

158.     Defendants' advertising conduct creates a likelihood or probability of consumer

confusion with respect to the affiliation between Plaintiffs and Defendants' Clubs and the nature

of advertising that Plaintiffs allow.

159.     Plaintiffs compete with Defendants for limited consumer attention focused on

advertisements featuring physically attractive women.

160.     Defendants' conduct as described herein constitutes unfair common law palming

off or unfair competition.

161.     As a direct and proximate result of Defendants' unfair competition, Defendants

have damaged Plaintiffs by failing to compensate them for the value of use of their images,

likenesses, advertising ideas, and trade dress and by causing harm to Plaintiffs' goodwill and reputation, which has been disparaged and defamed by Defendants' conduct.

162.     As a direct and proximate result of Defendants' unfair competition, Defendants have earned and withheld profits attributable directly or indirectly to the unlawful use of Plaintiffs' images, entitling Plaintiffs to a disgorgement of those ill-gotten gains.

163.     Based on the foregoing, Plaintiffs demand judgment against Defendants on Plaintiffs' unfair competition claims and entry of an order awarding Plaintiffs damages, injunctive relief, costs, attorney's fees, and all other such other and further relief as to this Court seem just, proper, and equitable.

**COUNT VII**
**Negligence**

164.     Plaintiffs re-state and re-allege paragraphs 1 through 75 above and incorporate the same by reference as though fully set forth herein.

165.     Each Plaintiff brings this claim against each Defendant.

166.     Upon information and belief, Defendants were negligent in their failure to supervise their managers, employees, or contractors, and further negligent in their failure promulgate policies and procedures with respect to the use of only such images, likenesses, advertising ideas, and trade dress in advertising on Defendants' Social Media Accounts for which Defendants had legal right and authority.

167.     Defendants' negligent failure to supervise or promulgate policies and procedures was the proximate cause of the harm and damages Plaintiffs suffered when Defendants used and published each Plaintiffs' image in Defendants' advertisements, defaming and disparaging Plaintiffs and their reputations and brands, without permission or payment.

168.     In the alternative, and upon information and belief, even if Defendants promulgated policies and procedures concerning use of only such images in advertising on Defendants' Social Media Accounts for which Defendants had legal right and authority, Defendants nevertheless negligently failed to enforce those policies and procedures, failed to sufficiently communicate them to managers, employees, or contractors, and failed to exercise reasonable supervision of managers, employees, or contractors.

169.     In addition, Defendants had a duty to exercise reasonable care in refraining from appropriating the images and likenesses of individuals from whom Defendants lacked permissions, consent, or license, and breached that duty by its negligent hiring, screening, retaining, supervising, and/or training of its managers, employees, and contractors involved in Defendants' advertising activities.

170.     As a direct and proximate result of Defendants' negligence as alleged herein, Plaintiffs have suffered damages and demand judgment against Defendants on Plaintiffs' negligence claims and entry of an order awarding Plaintiffs damages, injunctive relief, costs, attorney's fees, and all other such other and further relief as to this Court seem just, proper, and equitable.

## COUNT VIII
## Unjust Enrichment

171.     Plaintiffs re-state and re-allege paragraphs 1 through 75 above and incorporate the same by reference as though fully set forth herein.

172.     Each Plaintiff brings this claim against each Defendant.

173.     As previously alleged, Defendants used Plaintiffs' images, likenesses, trade dresses, and advertising ideas to advertise and promote Defendants' Clubs and their activities, thereby driving customers, business, and revenue to Defendants.

174.     Accordingly, Plaintiffs conferred a benefit on Defendants.

175.     Defendants knew or should have known that they benefited from the use of Plaintiffs' images as is evident from the fact that Defendants published Plaintiffs' images to promote and advertise Defendants' Clubs and their activities.

176.     Although Defendants are in the adult entertainment business and knew or should have known of the standard negotiation process over the terms of use, conditions of release, licensing issues, and other contractual incidences related to the use and exploitation of a professional model's image and likeness for commercial benefit, Defendants retained the benefits of using Plaintiffs' images and likenesses without compensating Plaintiffs.

177.     Moreover, Defendants circumvented the appropriate licensing and negotiating process, thereby avoiding payment to Plaintiffs, the cost of photoshoots, payments to Plaintiffs' agents or agencies, and the costs of licensing, totaling a substantial sum of money and resulting in a windfall for Defendants.

178.     Defendants' unauthorized use and alteration of Plaintiffs' images and likenesses has and will continue to directly and proximately cause harm and damage to Plaintiffs, their reputations, and their brands by attributing to Plaintiffs their association with, involvement with, or endorsement of the Clubs.

179.     As a direct and proximate result of Defendants' actions, Defendants have damaged Plaintiffs by failing to compensate them for the value of each misappropriated use of their likeness and associating them with Defendants' Clubs without Plaintiffs' consent.

180.     As a direct and proximate result of the benefit Plaintiffs conferred on Defendants, Defendants have earned and continue to earn and withhold profits attributable directly or indirectly

to the wrongful use of Plaintiffs' images, entitling Plaintiffs to a disgorgement of those ill-gotten gains as remuneration.

181.    Based on the foregoing, Plaintiffs demand judgment against Defendants on Plaintiffs' unjust enrichment equitable claims and entry of an order awarding Plaintiffs damages, injunctive relief, equitable relief, costs, attorney's fees, and all other such other and further relief as to this Court seem just, proper, and equitable.

## VI.    DEMAND FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully pray for judgment against Defendants on each of the claims listed above as follows:

1.    For actual, consequential, and incidental damages in an amount to be proven at trial;

2.    For the amount due, owing, and unpaid to Plaintiffs as representing the fair market value compensation Plaintiffs would have otherwise received for uses of Plaintiffs' images and likenesses;

3.    For trebling of damages or statutory damages as permitted by law;

4.    For prejudgment interest in an amount permitted by law;

5.    For disgorgement of Defendants' profits;

6.    For a permanent injunction barring Defendants' use of Plaintiffs' images or likenesses in advertisements or other promotional material for the Clubs, including but not limited to an order requiring Defendants to direct removal of all uses of Plaintiffs' images and likenesses from Defendants' Clubs' Social Media Accounts;

7.    For costs of this lawsuit;

8.    For reasonable attorneys' fees; and

9.    For all such other and further relief as to this Court seem just, proper, and equitable.

## VII.   <u>JURY DEMAND</u>

Plaintiffs hereby demand trial by jury as to all issues so triable in the above matter.


Dated: May 3, 2022                                      Respectfully submitted,

                                                        /s/ *Beatriz Mate-Kodjo*
                                                        Beatriz Mate-Kodjo AT 0012331
                                                        BMK Law Firm, PLLC
                                                        1910 Washington St. Ste. 100
                                                        Pella, Iowa 50219
                                                        Telephone: (641) 450-1668
                                                        Facsimile: (641) 847-7698
                                                        Email: beatriz@mate-kodjo-law.com
                                                        *Attorney for Plaintiffs and LR(d)(4) Qualified*
                                                        *Associate Counsel for attorney seeking admission*
                                                        *pro hac vice*

                                                        Edmund S. Aronowitz
                                                        MI Bar No. P81474, *application for pro hac vice*
                                                        *admission to be filed*
                                                        Aronowitz Law Firm PLLC
                                                        220 S. Main St. Ste. 305
                                                        Royal Oak, Michigan 48067
                                                        Telephone: (248) 716-5421
                                                        Facsimile: (248) 419-1032
                                                        Email: edmund@aronowitzlawfirm.com
                                                        *Attorney for Plaintiffs and Lead Counsel pending*
                                                        *pro hac vice admission*